### BEFORE THE UNITED STATES JUDICIAL PANEL
### ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| **In re**: CERTAIN UNDERWRITERS AT LLOYD'S LONDON, INSURANCE COMPANY COVID-19 BUSINESS INTERRUPTION PROTECTION INSURANCE LITIGATION | MDL No. 2961 |

## RESPONSE TO ORDER TO SHOW CAUSE

COMES NOW, Respondent, RUNWAY 84, INC. & RUNWAY 84 REALTY, LLC D/B/A ANTHONY'S RUNWAY 84, by and through the undersigned counsel, hereby Responds to this Honorable Court's Order to Show Cause as follows:

## INTRODUCTION

Multidistrict litigation is appropriate "[w]hen civil actions involving one or more common questions of fact are pending in different districts," and upon the "determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). The Judicial Panel on Multidistrict Litigation has already issued its order denying the creation of an industrywide consolidation. *In re: COVID-19 Bus. Interruption Prot. Ins. Litig.*, MDL No. 2942, D.E. 772 (J.P.M.L. 2020). This ruling fell in line with repeated holdings that industrywide transfer does not provide the convenience or efficiencies required for centralization when there is no predominant defendant or common questions of fact. *See*, *e.g.*, *In re: Tropicana Orange Juice Mktg. and Sales Practices Litig.*, 867 F. Supp. 2d 1341, 1342 (J.P.M.L. 2012); *In re: Yellow Brass Plumbing Component Products Liab. Litig.*, 844 F. Supp. 2d 1377, 1378 (J.P.M.L. 2012); *In re: Ambulatory Pain Pump-Chondrolysis Products Liab. Litig.*, 709 F. Supp. 2d 1375, 1377-78 (J.P.M.L. 2010).

Ultimately, the Judicial Panel on Multidistrict Litigation decided to create separate, smaller Multidistrict Litigation cases for the individual insurance companies involved in the initial MDL; however, as discussed in further detail *infra*, while that may provide for appropriate consolidation for individual insurance companies, Certain Underwriters at Lloyd's, London (hereinafter "Lloyd's"), is nothing of the sort. In fact, Lloyd's is a marketplace which allows separate entities to purchase shares of risk and set their own policy terms and conditions. As is the case with the lawsuits at issue here, Lloyd's policies are underwritten by dissimilar entities and have differing policy language. Because there is no true common defendant and the differences in policy language creates different questions of fact, consolidation is not appropriate. *See In re: Hotel Industry Sex Trafficking Litig.*, 433 F. Supp. 3d 1353, 1356 (J.P.M.L. 2020) (Denying consolidation when "there is no common or predominant defendant across all actions" nor "common questions of fact.").

## ARGUMENT

**I.   The Court should not consolidate all pending lawsuits against Certain Underwriters at Lloyd's, London, as Lloyd's of London is not an insurance company but a marketplace for insurance, and, as such, does not present a common Defendant.**

Respondent is Plaintiff in the matter of *Anthony's Runway 84 v. Certain Underwriters at Lloyd's, London*, Case No. 0:20-cv-61161, brought in the United States District Court for the Southern District of Florida. Respondent purchased a policy of insurance from Lloyd's for its restaurant located in Broward County, Florida; however, despite receiving a policy of insurance with the Lloyd's brand indicated as the insurer, Lloyd's is not an insurance company. As the Eleventh Circuit Court of Appeals explained in *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079 (11th Cir. 2010):

> The Society of Lloyd's, London, is not an insurance company, but rather a British organization that provides infrastructure for the international insurance market.

> Originating in Edward Lloyd's coffee house in the late seventeenth century, where individuals gathered to discuss insurance, the modern market structure was formalized pursuant to the Lloyd's Acts of 1871 and 1982. Lloyd's itself does not insure any risk. Individual underwriters, known as "Names" or "members," assume the risk of the insurance loss. Names can be people or corporations; they sign up for certain percentages of various risks across several policies. Once admitted to the Society of Lloyd's, each Name is subject to a number of bylaws and regulations ensuring that he or she is solvent and "that at all times there are available sufficient funds" to pay all claims…
>
> Names underwrite insurance through administrative entities called syndicates, which cumulatively assume the risk of a particular policy… The syndicates are not incorporated, but are generally organized by Managing Agents, which may or may not be corporations. The Managing Agents determine the underwriting policy for the syndicate and accept risks on its behalf, retaining a fiduciary duty toward the underwriting Names. As mere administrative structures, the syndicates themselves bear no risk on the policies that they underwrite; the constituent Names assume individual percentages of underwriting risk. The Names are not liable for the risks that the other Names assume. Names purchase insurance through underwriting agents.
>
> Lead underwriters, or active underwriters, serve as the public faces for particular syndicates… This underwriter is usually the only Name disclosed on the policy, although the Lloyd's Policy Signing Office keeps records on the identity of each Name underwriting a policy.

*Id.* at 1083 (citations omitted). As of 2018, Lloyd's was comprised of 58 Managing Agents overseeing 115 syndicates. *See* Lloyd's Annual Report 2018, https://www.lloyds.com/~/media/files/lloyds/investor-relations/2018/annuals/annual-report.pdf.[1]

At the onset of the instant MDL, 14 different lawsuits were consolidated. The plaintiffs in these lawsuits are comprised of, but not necessarily limited to, restaurants, a beauty salon, a bed and breakfast, and a vacation rental company. While some of these Plaintiffs' policies may share similar Managing Agents and syndicates, they are not all the same and they are certainly not identical. This means representatives of multiple Managing Agents and syndicates, or their

---

[1] "Courts may take judicial notice of facts which can be 'accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Nation Motor Club, Inc. v. Stonebridge Cas. Ins. Co.*, 10-CV-81157, 2012 WL 10060179, FN 2 (S.D. Fla. July 5, 2012) (quoting Fed.R.Evid. 201(b)(2)).

various third party administrators, will be involved in the discovery process. To that end, where it may be judicious to consolidate actions when the underwriting insurance company is a single company with its own in-house representatives, consolidation in this matter with numerous syndicates and Managing Agents, each with their own representatives and witnesses, would invite chaos. *See*, *e.g.*, *In re: Ambulatory Pain Pump–Chondrolysis Prods. Liab. Litig.*, 709 F.Supp.2d 1375 (J.P.M.L. 2010) (denying centralization, in pertinent part, because most, if not all, defendants were named "in only a minority of actions," and others were named in "but a handful"); *In re: Table Saw Prods. Liab. Litig.*, 641 F.Supp.2d 1384, 1385 (J.P.M.L. 2009) (denying centralization of 42 actions where no defendant was sued in all actions and several entities were named in only two or three).

II. **The Court should not consolidate all pending lawsuits against Certain Underwriters at Lloyd's, London, as, due to the various policy forms utilized in Lloyd's policies, there is not a uniform common question of fact across the various lawsuits.**

There are a number factual issues which remain central to coverage in each action which are not uniform across the pending lawsuits. This is likely to bring about numerous and substantial individualized discovery and legal issues thereby warranting decentralization. *See*, *generally*, *In re: Mortgage Lender Force-Placed Ins. Litig.*, 895 F. Supp. 2d 1352 (U.S. Jud. Pan. Mult. Lit. 2012); *see also In re: Mortg. Indus. Home Affordable Modification Program (HAMP) Contract Litig.*, 867 F.Supp.2d 1338, 1338–39, 2012 WL 2175734, at *1 (J.P.M.L. June 11, 2012) (denying centralization where "the nature of plaintiffs' allegations and the involvement of many different non-overlapping defendants make the existence of common questions of fact unlikely").

First, as the policies are comprised of separate Managing Agents and syndicates, there is also an issue with regards to the policy forms utilized. Each Managing Agents is free to choose

the policy forms, called "wordings," which are to be included in the final insuring agreement, either selecting from a shared Wordings Repository containing "vetted policy wordings and clauses regularly used within the London market" or uploading their own wordings.  *See* Lloyd's Wordings Repository, https://www.lloyds.com/tools-and-systems/lloyds-wordings-repository.[2]

Because of the manner in which Lloyd's policies are written, while some of the policies at issue here contain similar policy wordings and forms to one another, others have completely different wordings and forms thereby creating issues of fact which vary across the cases.  In particular, there is no uniform question of fact with regards to coverage for viruses under the policies at issue.  Some such policies do not have virus exclusions, others outright excluding "viruses," and still others containing more abstruse exclusions related to causes such as "organic pathogens" or "microorganisms."  These unique issues may cause delays in pretrial proceedings due to the need for separate discovery and motion practice deadlines.  *See In re: Proton-Pump Inhibitor*, 273 F. Supp. 3d 1360, 1362 (J.P.M.L. 2017); *In re: Invokana (Canagliflozin) Products Liab. Litig.*, 223 F. Supp. 3d 1345, 1348 (J.P.M.L. 2016).  To that end, this is reason enough to avoid consolidation.

Next, the question regarding causation of direct physical loss is not uniform across the pending lawsuits.  While some of the pleadings allege the presence of COVID-19 causing direct physical loss others assert that governmental orders were the cause of direct physical loss properties.  While Courts across the country have started to perform analyses regarding these differing allegations, it is uniformity of fact, not law, which goes to the issues of centralization.  Because the issues of fact regarding causation are dissimilar, centralization is not warranted.  *See In re: Clean Water Rule: Definition of "Waters of the United States"*, 140 F. Supp. 3d 1340 (U.S. Jud. Pan. Mult. Lit. 2015).

---

[2] *See* footnote 2

## **CONCLUSION**

For the forgoing reasons, the Judicial Panel on Multidistrict Litigation should deny transfer to a single district for consolidated or coordinated pretrial proceedings under 28 U.S.C. § 1407 and remand the pending lawsuits accordingly.

Respectfully submitted this day, August 24, 2020, by:

> CASSEL & CASSEL, P.A.
> 4000 Hollywood Blvd.
> Suite 685-S
> Hollywood, FL 33021
> t: (954) 589-5504
> f: (954) 900-1768
> Service: pleadings@cassel.law
>
> */s/Michael A. Cassel*
> **Michael A. Cassel, Esq.**
> Florida Bar No. 97065

**{Proof of Service located on next page}**

## **PROOF OF SERVICE**

I HEREBY CERTIFY, on August 24, 2020, in compliance with Rule 4.1(a) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, the foregoing document was filed with this Honorable Court's CM/ECF system at which time all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document electronically or in another authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

*/s/Michael A. Cassel*
**Michael A. Cassel, Esq.**
Florida Bar No. 97065