BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re:  CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, COVID-19 BUSINESS INTERRUPTION PROTECTION INSURANCE LITIGATION | ) ) ) ) ) ) ) MDL Docket No. 2961 |

**SA PALM BEACH RESPONSE TO ORDER TO SHOW CAUSE FOR TRANSFER AND COORDINATIONOR CONSOLIDATION UNDER 28 U.S.C. §1407**

Plaintiff SA Palm Beach LLC ("SA Palm Beach"), by and through its undersigned counsel, pursuant to 28 U.S.C. §1407 and Rule 6.2(e) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation ("Panel"), respectfully submits the following response to the Panel's Order to Show Cause (ECF No. 3), and recommends that the Panel transfer and centralize all pending lawsuits against Certain Underwriters at Lloyd's, London (the "Lloyd's Actions") in the Southern District of Florida.

## I.  PRELIMINARY STATEMENT

The Panel is familiar with the factual background and legal issues surrounding the business interruption insurance claims that have arisen from the COVID-19 pandemic. While denying an industry-wide MDL, the Panel issued orders to show cause with respect to certain insurers as to why the claims against them should not be coordinated, Lloyd's being among them. As explained more fully below, SA Palm Beach supports centralizing and coordinating the Lloyd's Actions, and any potential tag-along cases, in the Southern District of Florida.

## II.  ARGUMENT IN SUPPORT OF CENTRALIZATION AND TRANSFER

### A.  Centralization Will Promote Section 1407's Goals of Ensuring the Just and Efficient Conduct of the Actions and Avoiding Inconsistent or Conflicting Determinations

28 U.S.C. §1407(a) provides, in relevant part:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

"Centralization under Section 1407 is . . . necessary in order to eliminate duplicative discovery; prevent inconsistent pretrial rulings, especially with respect to class certification; and conserve the resources of the parties, their counsel and the judiciary." *In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 344 F. Supp. 2d 755, 757 (J.P.M.L. 2004). The litmus test of transferability and coordination under Section 1407 is the presence of common questions of fact. *In re Fed. Election Campaign Act Litig.*, 511 F. Supp. 821, 823 (J.P.M.L. 1979); *see also In re Meridia Prod. Liab. Litig.*, 217 F. Supp. 2d 1377, 1378 (J.P.M.L. 2002).

Here, the Lloyd's Actions are particularly well suited for MDL treatment because of the common factual and legal questions presented in the individual cases, and MDL treatment will preserve judicial resources. *In re S. Pac. Transp. Co. Emp't Practices Litig.*, 429 F. Supp. 529, 531 (J.P.M.L. 1977); *see also In re Terrorist Attacks on Sept. 11, 2001*, 295 F. Supp. 2d 1377, 1378 (J.P.M.L. 2003) (noting that transfer is favored where there are overlapping legal issues among the various cases).

Lloyd's is an insurer that, to the best of SA Palm Beach's knowledge, uses only a small number of essentially identical policy forms. Common questions exist as to Lloyd's practices with respect to denying business interruption claims relating to stay-at-home orders intended to mitigate the spread of COVID-19, and Lloyd's investigation, if any, into those claims. Motions filed by the parties in the Lloyd's Actions will require the resolution of essentially the same issues of fact and law, including, but not limited to, interpreting the phrase "direct physical loss or damage to" covered property, determining whether plaintiffs' businesses were closed as a result of "direct

physical loss or damage" to covered property, and deciding whether any policy exclusions apply to bar coverage. *See In re Oil Spill by "Amoco Cadiz" off the Coast of France on Mar. 16, 1978*, 471 F. Supp. 473, 478 (J.P.M.L. 1979) (ordering centralization where actions "involve common questions of fact").

Perhaps most importantly, centralization will "prevent duplication of discovery and eliminate the possibility of conflicting pretrial rulings concerning the common factual questions." *Id*.; *see also In re Ryder Truck Lines, Inc. Emp't Practices Litig.*, 405 F. Supp. 308, 309 (J.P.M.L. 1975). In particular, Lloyd's has already begun filing motions which raise nearly identical arguments as to why the insured's claim is not entitled to be paid. None have yet been fully briefed, but it would be a waste of judicial resources to have essentially the same issues decided by multiple judges. The insureds will also inevitably raise different variations of the same arguments in response to Lloyd's motions. This situation is an invitation for conflicting pretrial rulings relating to common questions.

Based upon the foregoing, the transfer of the Lloyd's Actions to a single forum will eliminate duplicative discovery; prevent inconsistent pretrial rulings regarding coverage; conserve the resources of the parties, counsel, and the judiciary; and promote the just and efficient conduct and resolution of the Lloyd's Actions. Simply put, centralization will promote efficiency by allowing these common disputes to be argued before and resolved by a single Transferee Court.

**B.     The Southern District of Florida Is the Most Appropriate Forum**

In selecting an MDL location, the Panel considers each proposed district's nexus to the litigation, as well as factors including the available district court's docket conditions and the district's accessibility. *See In re Veeco Instruments, Inc. Sec. Litig.*, 387 F. Supp. 2d 1365, 1366 (J.P.M.L. 2005). Here, these factors support transfer to the Southern District of Florida.

The Southern District of Florida has the strongest nexus to the Lloyd's Actions. Five of the fourteen related cases were filed in the Southern District of Florida. Plaintiffs in a sixth case, filed in the Southern District of New York, operate their two businesses in the Southern District of Florida.[1] And a seventh case is pending nearby in the Middle District of Florida. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 148 F. Supp. 3d 1367 (J.P.M.L. 2015) ("[W]e are persuaded that . . . the Northern District of California is the appropriate transferee district for this litigation" because "nearly a fifth of all cases filed nationwide" are pending there, and as a result "the relevant documents and witnesses may be found in both the Northern District and throughout California[.]"). The other judicial districts only have one or two pending cases. *See* Order to Show Cause at 2. Further, Lloyd's has an office in Miami,[2] holds events in Miami,[3] and controls a quarter of the market for higher risk insurance and re-insurance in Florida.[4]

The docket conditions in the Southern District of Florida are also particularly favorable for an MDL when compared to the other districts where the Lloyd's Actions have been filed. In 2019,

---

[1]   *See* Amended Complaint, ECF 16 at ¶1, *Gio Pizzeria & Bar Hospitality, LLC, et al. v. Certain Underwriters at Lloyd's, London Subscribing to Policy Numbers ARP-74910 AND ARP-75209-20*, No. 1:20-03107 ("Plaintiffs own and operate . . . full-service bar and restaurants . . . with locations in Coral Springs, Broward County, Florida and Boca Raton, Palm Beach County, Florida.").

[2]   *See* https://www.reinsurancene.ws/lloyds-to-launch-miami-office/.

[3]   *See* 2020 *Lloyd's annual Miami Meet the Market*, INDEP. NETWORK OF LATAM INS. PROS., https://www.insuranceprofessionalslatam.com/event/lloyds-annual-miami-meet-market-2020-insurance-week/ (last visited Aug. 25, 2020).

[4]   *See The Sunshine Economy: Lloyd's Of London CEO On The Rising Cost of Risk And Climate Change*, WLRN, https://www.wlrn.org/show/the-sunshine-economy/2020-02-25/the-sunshine-economy-lloyds-of-london-ceo-on-the-rising-cost-of-risk-and-climate-change (last visited Aug. 25, 2020).

the Southern District of Florida's median time from filing to disposition was 3.9 months, and the median time from filing to trial in civil cases was 15.8 months.[5] These numbers show the Southern District of Florida was more efficient than the other potential transferee districts.[6] Further, at 2.4%, the Southern District of Florida has one of the lowest percentages of active cases that are over three years old.[7]

The judges in the Southern District of Florida are also exceptionally qualified and experienced in MDL litigation, as evidenced by the Panel's selection of the Southern District of Florida as the transferee venue in numerous largescale MDL actions. Recently, the Panel noted the "Southern District of Florida . . . is a relatively convenient and accessible forum, with resources and the capacity to efficiently handle what could be a large litigation." *In re Zantac (Ranitidine) Products Liability Litig.*, MDL No. 2924, ECF No. 198 (J.P.M.L. Feb. 6, 2020). The Panel has also recognized the Southern District of Florida has judges with extensive MDL experience. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 626 F. Supp. 2d 1346, 1347 (J.P.M.L. 2009) (finding that centralization in the chosen district permits the Panel to "effect the section 1407 assignment to a judge who has extensive experience in multidistrict litigation as well as the ability and temperament to steer this complex litigation on a steady and expeditious course"); *In*

---

[5] United States District Courts—National Judicial Caseload Profile, Combined Civil and Criminal Federal Court Management Statistics (Dec. 31, 2019), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2019.pdf.

[6] *Compare* the filing to disposition and filing to trial timeframes from the Middle District of Florida (5.7 months and 22.7 months), the Eastern District of Louisiana (7.7 months and 19.2 months), the Eastern District of Pennsylvania (6 months and 19.6 months), the Southern District of New York (6.5 months and 31.1 months), and the District of New Jersey (9.8 months and 46.3 months).

[7] Only the District of New Jersey, at 2.1% is lower. The remaining percentages are 5.9% (Middle District of Florida); 20.7% (Eastern District of Pennsylvania); 20.9% (Southern District of New York); and 32.5% (Eastern District of Louisiana).

*re Trasylol Prods. Liab. Litig.*, 545 F. Supp. 2d 1357, 1358 (J.P.M.L. 2008) (assigning case to the Southern District of Florida and reasoning that by centralizing litigation in the Southern District of Florida, the matter would be before a district court judge with "the experience to steer this litigation on a prudent course").[8] Additionally, the Southern District of Florida judges are also well-versed in insurance coverage disputes as hurricane-related lawsuits are common in South Florida.[9]

In the instant case, the center of gravity is in the Southern District of Florida. Most of the plaintiffs are restaurants and other businesses located in South Florida, so their documents and witnesses would be located in the Southern District of Florida. Most of the related actions have also been filed in the Southern District of Florida. Further, the Southern District of Florida efficiently manages litigation and has exceptionally qualified judges who are more than capable of steering this litigation on a steady and expeditious course.

### C. Any of the Southern District of Florida Judges Would be Perfect Choices for the Lloyd's Actions Transferee Judge

While SA Palm Beach does not have any strong views on an appropriate Article III judge to oversee the Lloyd's Actions, in the event the Panel decides to transfer and centralize the Lloyd's

---

[8] Other notable cases the Panel has transferred to the Southern District of Florida include *In re Takata Airbag Prods. Liability Litig.,* MDL No. 2599, and *In re Checking Account Overdraft Litig.*, MDL No. 2036.

[9] *See e.g.,* Ron Hurtibise, *Hurricane Irma powers sharp increase in lawsuits against insurers*, S. FLA. SUN-SENTINEL (May 3, 2018) https://www.sun-sentinel.com/business/fl-bz-hurricane-irma-suits-on-rise-againstinsurers-20180502-story.html (last visited Aug. 25, 2020); *see also*, *QBE Ins. Corp. v. Dome Condo. Ass'n, Inc.*, 577 F. Supp. 2d 1256, 1257 (S.D. Fla. 2008) (involving property insurer and disputed insurance claim following hurricane); *Townhouses of Highland Beach Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 504 F. Supp. 2d 1307, 1309 (S.D. Fla. 2007) (Insured condominium association brought suit against property insurer for coinsurance provisions following hurricane); *Fabricant v. Kemper Indep. Ins. Co.*, 474 F. Supp. 2d 1328, 1329 (S.D. Fla. 2007) (Insureds brought class action against their insurer based on insurers' failure to provide loss assessment coverage following hurricane).

Actions to the Southern District of Florida, any of the District Judges in the Southern District of Florida currently overseeing one or more of the Lloyd's Actions would be perfect choices.

An Article III judge since 2014, District Judge Darrin P. Gayles is an experienced jurist and currently oversees *In re Monat Hair Care Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, MDL No. 2841. District Judge Gayles currently presides over two of the Lloyd's Actions, *Atma Beauty, Inc. v. HDI Global Specialty SE*, No. 1:20-cv-21745 (S.D. Fla.), and *Sun Cuisine, LLC v. Certain Underwriters at Lloyd's London*, No. 1:20-cv-21827 (S.D. Fla.).

Senior District Judge Federico Moreno, currently overseeing *Town Kitchen, LLC v. Certain Underwriters at Lloyd's London*, No. 1:20-cv-22832 (S.D. Fla.), is one of the most experienced MDL transferee judges in the nation. He has capably and efficiently overseen two large MDLs, *In re Takata Airbag Products Liability Litig.*, MDL No. 2599, and *In re Managed Care Litig.*, MDL No. 1334.

District Judge Raag Singhal is a relatively new Article III judge who has already established himself as a thoughtful and brilliant jurist. Prior to Judge Singhal's appointment to the federal bench, he was one of the most well-respected Circuit Court judges in Broward County, Florida. He is the first Asian-Pacific American and Indian American to serve as an Article III federal judge in the Eleventh Circuit. Judge Singhal currently presides over one of the Lloyd's Actions, *Runway 84, Inc. v. Certain Underwriters at Lloyd's London*, No. 0:20-cv-61161 (S.D. Fla.).

District Judge Ursula Ungaro, who has not presided over an MDL matter, has served as an Article III judge for the last 28 years. She is assigned to two of the most procedurally advanced of the Lloyd's Actions in the Southern District, *SA Palm Beach LLC v. Certain Underwriters at*

7

*Lloyd's London*, No. 9:20-cv-80677-UNGARO (S.D. Fla.), and *El Novillo Rest. v. Certain Underwriters at Lloyd's London*, No. 1:20-cv-21525 (S.D. Fla.).

## III.   CONCLUSION

For the foregoing reasons, SA Palm Beach respectfully requests that the Panel enter an Order pursuant to 28 U.S.C. §1407 centralizing for coordinated or consolidated pretrial proceedings all related and tag-along related actions in the Southern District of Florida.

DATED: August 26, 2020

CARELLA, BYRNE, CECCHI,
   OLSTEIN, BRODY & AGNELLO, P.C.
JAMES E. CECCHI
LINDSEY H. TAYLOR

/s/ James E. Cecchi
James E. Cecchi

5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
973/994-1744 (fax)
jcecchi@carellabyrne.com
ltaylor@carellabyrne.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
PAUL J. GELLER
STUART A. DAVIDSON
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com
sdavidson@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
RACHEL L. JENSEN
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
rachelj@rgrdlaw.com

8

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

SEEGER WEISS LLP
CHRISTOPHER A. SEEGER
STEPHEN A. WEISS
77 Water Street, 8th Floor
New York, NY 10005
Telephone: 212/584-0700
212/584-0799 (fax)
cseeger@seegerweiss.com
sweiss@seegerweiss.com

Attorneys for Plaintiff SA Palm Beach

## **PROOF OF SERVICE**

In compliance with Rule 4.1(a) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, I hereby certify that on August 26, 2020, I caused the Interested Party Response to be filed with the Court's CM/ECF system, which sends a service copy to all registered parties in the action at their associated email addresses.

Dated: August 26, 2020

/s/ James E. Cecchi
JAMES E. CECCHI

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
5 Becker Farm Road
Roseland, New Jersey 07068
Tel: (973) 994-1700
Fax: (973) 994-1744
jcecchi@carellabyrne.com

Attorneys for Plaintiff
SA Palm Beach, LLC