BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATOIN

IN RE: CERTAIN UNDERWRITERS   )
AT LLOYD'S, LONDON, COVID-19  )
BUSINESS INTERRUPTION         )      MDL DOCKET NO. 2961
PROTECTION INSURANCE          )
LITIGATION                    )

**PLAINTIFFS KING'S PALACE, INC AND KPC, INC'S RESPONSE TO PANEL'S ORDER TO SHOW CAUSE**

Plaintiffs King's Palace, Inc. and KPC, Inc., and by and through their undersigned counsel, respond to the Panel's Order to Show Cause (Dkt. # 3), as follows:

**I.      INTRODUCTION**

In its Order Denying Transfer and Directing Issuance of Show Cause Orders (Dkt. # 1) (the "Order Denying Transfer'), the Panel declined to create an industry-wide MDL based on its finding that "these cases involve different insurance policies with different coverages, conditions, exclusions, and policy language, purchased by different businesses in different industries located in different states. These differences will overwhelm any common factual questions."  Order Denying Transfer, at 2.  The Panel went on to note that, "[w]hile the policy language for business income and civil authority coverages may be very similar among the policies, seemingly minor differences in policy language could have significant impact on the scope of coverage." *Id.* at 3. However, the Panel ordered further briefing regarding whether single-insurer MDLs should be created.  In doing so, the Panel posited that because "[t]he actions are more likely to involve insurance policies utilizing the same language, endorsements, and exclusions… there is a significant possibility that the actions will share common discovery and pretrial motion practice… [that] centralization of these actions could eliminate inconsistent pretrial rulings with respect to the overlapping nationwide class claims that most of the insurers face… [and that] an insurer-specific MDL therefore could achieve the convenience and efficiency benefits envisioned by

Section 1407." *Id.*, at 3-4.

As discussed below, the reality is that the claims against Certain Underwriters of Lloyd's, London ("Lloyd's") will need to be analyzed on a state-by-state basis according to each state's laws and regulatory scheme. As such, the centralization of all actions against Lloyd's would not "achieve the convenience and efficiency benefits envisioned by Section 1407." If the Panel nevertheless orders the creation of an MDL for actions involving Lloyd's, it should transfer the actions to the Southern District of Florida, a District with available, experienced and skilled jurists that is convenient for all parties.

## II.  ARGUMENT

### A.  Transfer of All Actions Pending Against Lloyd's for Coordinated or Consolidated Proceedings Is Not Warranted.

28 U.S.C. § 1407(a) provides that, to justify the creation of an MDL, a movant must show that (1) the actions share sufficient common questions of fact, (2) transfer would be for the convenience of the parties and witnesses, and (3) transfer would advance the just and efficient conduct of the actions. 28 U.S.C. § 1407(a); *In re Highway Accident Near Rockville, Conn., on Dec. 30, 1972*, 388 F. Supp. 574, 575 (J.P.M.L. 1975) ("Before transfer will be ordered, the Panel must be satisfied that all of the statutory criteria have been met."); *see also* Manual for Complex Litigation § 20.131 (4th ed. 2004), *available at* https://public.resource.org/scribd/8763868.pdf ("The objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save time and effort of the parties, the attorneys, the witnesses, and the courts."). As set forth below, because none of these criteria have been met, even as to the creation of an MDL limited to cases brought against Lloyd's, the Panel should decline to transfer the underlying actions.

### 1. The Actions Do Not Share Sufficient Common Questions of Fact.

Even Lloyd's, which stands to benefit the most from centralization of all the actions against it, has taken the position that the subject actions "involve the interpretation of insurance policies under various state laws and regulatory schemes." Response in Opposition to Motion for Transfer and Coordination or Consolidation Under 28 U.S.C. § 1407 (Dkt. # 450), at 8. Where, as here, actions involve insurance policies that must be interpreted according to the state laws and regulatory schemes in the jurisdictions in which they were issued, the Panel routinely denies requests to transfer. *See, e.g.*, *In re Healthextras Ins. Mktg. & Sales Practices Litig.*, 24 F. Supp. 3d 1376, 1377 (J.P.M.L. 2014) (denying consolidation when the key issue in all cases was legal in nature and insurance policies were "defined by the laws and regulations of the relevant state"); *In re Title Ins. Real Estate Settlement Procedures Act (RESPA) & Antitrust Litig*, 560 F. Supp. 2d 1374, 1376 (J.P.ML. 2008) (denying transfer because actions "encompass different regulatory regimes in the states in which actions are pending along with variances in insurance regulation and law in each state"). The Panel should do the same here.

### 2. Transfer Would Not Serve the Convenience of the Parties or Witnesses or Advance the Just and Efficient Conduct of the Actions.

Because resolving the actions pending against Lloyd's will entail the interpretation of insurance policies according to the laws and regulatory schemes of the various states in which they were issued, transfer and centralization of all actions pending against Lloyd's would not serve the "convenience of the parties or witnesses" or "advance the just and efficient conduct of the actions" as required by 28 U.S.C. § 1407(a). Regardless of the District in which any MDL against Lloyd's were centralized, such a proceeding would require plaintiffs who have filed actions in their local courts across the country to litigate their claims in a remote jurisdiction. Moreover, rather than permitting the various federal judges presiding over the actions to interpret the terms of Lloyd's

insurance policies in accordance with the local state laws with which they are familiar, centralization would force a single federal judge to apply the laws of many states, which will likely delay resolution of the actions.

### B. If the Panel Does Create an MDL for Actions Involving Lloyd's, It Should Transfer Those Actions to the Southern District of Florida.

If the Panel nevertheless creates an MDL for actions involving Lloyd's, it should transfer those actions to the Southern District of Florida. Relevant factors for selecting a transferee forum include the congestion and bandwidth of the potential transferee districts, the ease of access to the potential transferee districts, and the availability of experienced and skilled jurists. *See, e.g., In re: Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practices Litig.,* 844 F. Supp. 2d 1380, 1381 (J.P.M.L. 2012); *In re: A-Power Energy Generation Sys., Ltd. Sec. Litig.*, 829 F. Supp. 2d 1382,1383 (J.P.M.L. 2011); *In re Fisher-Price Rock 'N Play Sleeper Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2903, 2019 WL 4010712, at *2 (J.P.M.L. 2019). Here, these factors weigh in favor of the Southern District of Florida.

*First*, there are currently only seven MDLs pending in the Southern District of Florida. In comparison, there are ten MDLs pending in the Eastern District of Pennsylvania and eleven MDLs pending in the Northern District of Illinois, where movants seek to create yet another MDL or more. *See* United States Judicial Panel on Multidistrict Litigation, *MDL Statistics Report – Distribution of Pending MDL Dockets by District*, https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-August-17-2020.pdf. As such, it would be more efficient to send these matters to the Southern District of Florida, which has fewer assigned MDL proceedings.

*Second*, as the Panel has previously noted, Southern District of Florida is "a convenient and accessible district." *In Re: Ermi LLC ('289) Patent Litig.*, 396 F.Supp.3d 1358 (J.P.M.L.

4

2019); *In Re: Zantac (Rnatadine) Products Liability Litig.*, 437 F.Supp.3d 1368, 1370 (J.P.M.L. 2020). This factor therefore also weighs in favor of transfer to the Southern District of Florida.

*Third*, transferring the cases to the Southern District of Florida, where there are sixteen District Judges and eleven Senior District Judges (https://www.flsd.uscourts.gov/district-judges) but only seven MDLs currently pending, would ensure the availability of experienced and skilled jurists. Indeed, as the Panel recently recognized, the Southern District of Florida has "the resources and capacity to handle what could be a large litigation." *In Re: Zantac (Ranitidine) Products Liability Litig.*, 437 F.Supp.3d at 1370 (J.P.M.L. 2020).

## III.   CONCLUSION

For all the foregoing reasons, creating a nationwide MDL for all business interruption protection insurance litigation brought against Lloyd's would not "achieve the convenience and efficiency benefits envisioned by Section 1407." However, if the Panel creates such an MDL, the Panel should transfer the underlying actions to the Southern District of Florida.

DATED:  August 26, 2020                    Respectfully submitted,

WHATLEY KALLAS, LLP

By */s/ Patrick J. Sheehan*
Patrick J. Sheehan
101 Federal Street, 19th Floor
Boston, MA  02110
Phone:  617-573-5118
Fax:  800-922-4851
Email:  psheehan@whatleykallas.com

*Counsel for Plaintiffs,
King's Palace, Inc. and KPC, Inc. d/b/a King's
Palace Café, Tap Room and Absinthe Room*