**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: CERTAIN UNDERWRITERS AT LLOYD'S LONDON, COVID-19 BUSINESS INTERRUPTION PROTECTION INSURANCE LITIGATION | MDL No. 2961 |

**INTERESTED PARTY *AMICUS CURIAE* THIRST GROUP CORP.
RESPONSE TO ORDER TO SHOW CAUSE IN SUPPORT**

Pursuant to Rule 6.2(e) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, Thirst Group Corp. ("THIRST") respectfully submits this response as *amicus curiae* in support of transfer to a single district for consolidated or coordinated pretrial proceedings under 28 U.S.C. § 1407.

For the reasons discussed below, THIRST supports centralization but takes no position as to which district court the actions against Defendants ("Lloyd's Underwriters") should be transferred.

**I.      INTEREST OF AMICUS CURIAE**

The Hospitality Industry Re-Imagined Security Trust, or THIRST, is a Delaware corporation whose application for tax exempt status as a 501(c)(6) nonprofit is pending. THIRST works to ensure that the independent restaurant and bar community is at the center of COVID-19 policy responses, particularly regarding insurance protection. With approximately 750 members nationwide, THIRST has nearly as many members as there are business interruption cases pending today. THIRST also maintains volunteer organizers in 14 states and the District of Columbia. Membership is growing rapidly as millions of businesses approach insolvency with no end of the pandemic in sight. THIRST seeks solutions to reduce the failure rate of these businesses, including through community organizing, legislative reform, and litigation.

1

## II.      INTRODUCTION

Thousands of small business owners have been left without safety nets as a result of government orders suspending, or curtailing, operations of non-essential businesses, including bars, restaurants, and other members of the hospitality industry. Others shut their doors after COVID-19 spread among their workforce. Many of these businesses closed indefinitely, like Pittsburgh's Mixtape,[1] a THIRST member that could not justify taking on credit indefinitely after its claim for business interruption coverage was denied.



Imbibe magazine, a James Beard award-winning publication, described the myriad ways COVID-19 has injured these businesses. As part of that story, Imbibe generated the graphic above to illustrate the still-unfolding devastation the pandemic brought the hospitality industry. With information sourced from the National Association of American Wineries, The James Beard

---

[1]      See http://mixtapepgh.com/ (last accessed Aug. 26, 2020).

Foundation, the Brewers Association, and the Distilled Spirits Council of the United States, these figures paint a sobering picture of the pandemic's impact.[2]

It was for disruptions like this that businesses purchased "business interruption" insurance, a survival plan to protect them in the event of disaster. Notwithstanding this, Lloyd's Underwriters has categorically refused to pay any claim for business interruption arising from the COVID-19 pandemic. These blanket denials raise common questions that are fit for coordinated adjudication because their resolution requires an equally categorical and swift response. In other words, these small businesses should exit the pandemic the same way they entered and are enduring it: together.

### III.    ARGUMENT

The Panel may transfer to a single district court two or more civil actions pending in different districts for coordinated or consolidated pretrial proceedings when (1) the "actions involv[e] one or more common questions of fact," (2) transfer "will be for the convenience of parties and witnesses," and (3) transfer "will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). The statute permitting multidistrict litigation, 28 U.S.C. § 1407, "was enacted as a means of conserving judicial resources in situations where multiple cases involving common questions of fact were filed in different districts." *Royster v. Food Lion (In re Food Lion)*, 73 F.3d 528, 531–32 (4th Cir. 1996). Section 1407 "was meant to assure uniform and expeditious treatment in the pretrial procedures in multidistrict litigation," because "conflicting pretrial discovery demands for documents and witnesses might disrupt the functions of the Federal courts." *In re Phenylpropanolamine Prod. Liab. Litig.*, 460 F.3d 1217, 1230 (9th Cir. 2006) (quoting H.R. Rep. No. 1130, 90th Cong., 2d Sess. 1 (1968), reprinted in 1968 U.S.C.C.A.N. 1898)

---

[2]    Jessica Voelker, Imbibe, No. 86: Jul/Aug 2020, available at https://imbibemagazine.com/product/no-86-jul-aug-2020/ (last visited Aug. 26, 2020).

(internal quotation marks omitted). The alternative to appropriate transfer is "multiplied delay, confusion, conflict, inordinate expense and inefficiency." *Id*. (quoting *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 495 (J.P.M.L. 1968)) (internal quotation marks omitted).

The actions here assert overlapping claims based on multiple common factual allegations, and will involve common legal theories, themes, and documents. Consolidated pretrial treatment under § 1407 will assist the parties and the courts in avoiding duplicative and conflicting rulings on the common issues in dispute. It will also serve the convenience of the parties and witnesses and promote the just and efficient resolution of the litigation.

> A. **The Actions Involve Common Questions of Fact, and Centralization of the Actions Will Minimize the Risk of Inconsistent Rulings.**

The threshold requirement for transfer and centralization is the presence of common questions of fact. *See* 28 U.S.C. § 1407. Although common questions must predominate, the statute does not require a "complete identity or even [a] majority" of common questions of fact to justify transfer. *In re Zyprexa Prods. Liab. Litig.*, 314 F. Supp. 2d 1380, 1381 (J.P.M.L. 2004); *In re Darvocet, Darvon & Propoxyphene Prod. Liab. Litig.*, 939 F. Supp. 2d 1376, 1377 (J.P.M.L. 2013); *accord, In re Ins. Brokerage Antitrust Litig.*, 360 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005); *In re Denture Cream Prod. Liab. Litig.*, 624 F. Supp. 2d 1379, 1381 (J.P.M.L. 2009).

Insurance carriers follow risk profiles for acceptable underwriting. If 51% or more of a prospective policyholder's income is derived from the sale of alcohol they are most often placed with an excess and surplus, or E&S, carrier. On the other hand, if 51% of a business's income is derived from food sales, then the policyholder would fall into a restaurant category and terms specific to the liquor liability needs of that model would govern. Lloyd's Underwriters commonly insure this first group of similarly situated, alcohol-heavy bars.

Lloyd's Underwriters relies on standardized, categorized, and copywritten forms in issuing policies to these similarly situated businesses. These forms are prepared by the Insurance Services Office, known as "ISO." *See Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 772 (1993) (recognizing that "most primary insurers" in the United States use insurance forms from ISO, "an association of approximately 1,400 domestic property and casualty insurers" as the basis for their policies). At the center of these cases are ISO's Building and Personal Property Coverage Form, CP 00 10 10 12;[3] Business Income (and Extra Expense) Coverage Form, CP 00 30 04 02;[4] and Causes of Loss—Special Form, CP 10 30 09 17;[5] and potentially, ISO's Exclusion of Loss Due to Virus or Bacteria, CP 01 40 07 06.[6]

Insurance carriers frequently use these ISO forms without modification such that insureds are bound by the exact same policy language. This is easily confirmed by reviewing policyholders' insurance policies to determine whether their footers include ISO's copyright or, instead, whether the form indicates that it "[i]ncludes copyrighted material of Insurance Services Offices, Inc. with its permission," meaning the carrier has modified the policy language in some way.[7]

---

[3] *See* Building and Personal Property Coverage Form, CP-00101012, available at https://www.northstarmutual.com/UserFiles/File/forms/policyforms/Current/CP%2000%2010%2010%2012.pdf (last accessed Aug. 26, 2020).

[4] *See* Business Income (and Extra Expense) Coverage Form, CP-00300402, available at https://www.propertyinsurancecoveragelaw.com/files/file/CP00300402.pdf (last accessed Aug. 26, 2020).

[5] *See* Causes of Loss – Special Form, available at https://www.propertyinsurancecoveragelaw.com/files/file/CP%2010%2030%2004%2002.pdf (last accessed Aug. 26, 2020).

[6] *See* Exclusion of Loss Due to Virus or Bacteria, CP-01400706, available at https://generalliabilityinsure.com/documents/CP01400706EXCLUSIONOFLOSSDUETOVIRUSORBACTERIA.pdf (last accessed Aug. 26, 2020)

[7] *See* *e.g.*

IL HOS 05 02 01 14  Includes copyrighted material of Insurance Services Offices, Inc.  Page 1 of 1 with its permission

**Building and Personal Property Coverage Form, CP 00 10 10 12**

| CP 00 10 10 12 | © Insurance Services Office, Inc., 2011 | Page 1 of 16 |

**Business Income (and Extra Expense) Coverage Form, CP 00 30 04 02**

| CP 10 30 04 02 | © ISO Properties, Inc., 2001 | Page 1 of 9 |

**Causes of Loss—Special Form, CP 10 30 09 17**

| CP 10 30 09 17 | © Insurance Services Office, Inc., 2016 | Page 1 of 10 |

**Exclusion of Loss Due to Virus or Bacteria, CP 01 40 07 06**

| CP 01 40 07 06 | © ISO Properties, Inc., 2006 | Page 1 of 1 |

Drawing on the experiences of its members, THIRST understands that Lloyd's Underwriters likely relied on copywritten ISO forms in providing coverage to the plaintiffs in the pending cases, and in those cases it did not, Lloyd's Underwriters incorporated standard modifications to these copywritten documents, the uniformity of which will be easily determined during discovery. As a result, while the actions here involve different states, they all arise from a common foundation in the form of ISO's copywritten material or Lloyd's Underwriters' standard modifications thereto. As a result, every case will require the resolution of the same foundational questions. Determinations related to the interpretation of these standardized, categorized, and copywritten forms, and the discovery necessary to decide those questions, will apply across cases and will benefit greatly from uniformity in judicial interpretation.

### B. Consolidation and Transfer Will Serve the Convenience of the Parties and Prevent Duplicative Discovery.

The convenience of the parties and prevention of duplicative discovery also favor transfer. *See* 28 U.S.C. § 1407. All cases are in their infancy. If they continue to proceed separately, there will be substantial duplicative discovery because of the many overlapping issues of fact and law. Multiple actions could involve repetitive depositions of the current and former employees of Lloyd's Underwriters, and of the same experts, productions of the same documents, and responses to duplicative interrogatories, document requests, and requests for admission in courts around the country. *See, e.g., In re Pilot Flying J Fuel Rebate Contract Litig. (No. II)*, 11 F. Supp. 3d 1351, 1352 (J.P.M.L. 2014) ("Centralization will avoid repetitive depositions of [the defendant's] officers and employees and duplicative document discovery regarding the alleged scheme."). Absent transfer, the federal courts will need to administer—and Lloyd's Underwriters will need to defend—related actions across multiple venues, each potentially proceeding on a different pretrial schedule and subject to differing judicial decisions and local procedural requirements.

None of the cases has progressed to the point where any efficiencies will be lost through transfer and consolidation. This Panel has often recognized that consolidation benefits both plaintiffs and defendants by, for example, reducing discovery delays and costs for plaintiffs, and permitting plaintiffs' counsel to coordinate their efforts and share the pretrial workload. *See, e.g., In re Tribune Co. Fraudulent Conveyance Litig.*, 831 F. Supp. 2d 1371, 1372 (J.P.M.L. 2011) ("[P]rudent counsel likely will combine their forces and apportion their workload in order to streamline the efforts of the parties, their counsel and the judiciary. This streamlining combined with uniform case management will lead to an overall savings in transaction costs. Given the number of pending actions, centralization likely will result in a significant savings of time and money for the parties and the courts." (*citing In re Lawnmower Engine Horsepower Mktg. and*

*Sales Practices Litig.*, 588 F. Supp. 2d 1379 (J.P.M.L. 2008)); *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 173 F. Supp. 2d 1377, 1379 (J.P.M.L. 2001) (same).

### C. Consolidation and Transfer Will Promote the Just and Efficient Conduct of these Actions.

In determining whether a transfer would advance the just and efficient conduct of litigation, the Panel considers multiple factors, including (1) avoidance of conflicting rulings in various cases, (2) prevention of duplication of discovery on common issues, (3) avoidance of conflicting and duplicative pretrial conferences, (4) advancing judicial economy, and (5) reducing the burden on the parties by allowing division of workload among several attorneys. *See, e.g., In re Endangered Species Act Section 4 Deadline Litig.*, 716 F. Supp. 2d 1369, 1369 (J.P.M.L. 2010); *In re Bristol Bay, Salmon Fishery Antitrust Litig.*, 424 F. Supp. 504, 506 (J.P.M.L. 1976). The consideration of these factors here strongly supports transfer. THIRST is aware of several actions filed in different districts across the country, and there will likely be more filings in the coming weeks and months.[8] Thus, under the status quo, many different federal district courts will be ruling on the many common factual and legal issues presented in the actions and forthcoming tag-along actions. The presence of numerous counsel, plaintiffs, and courts currently involved in this litigation creates a significant risk of conflicting rulings, which would potentially generate avoidable confusion and conflict among the parties, and could also impose inconsistent obligations on Lloyd's Underwriters.

---

[8]  *See e.g.*, Zack Needles, *Law.com Trendspotter: COVID-19 Business Interruption Claims Are White-Hot, but Will Courts Cool Them Off?*, Law.com (Aug. 16, 2020), available at https://www.law.com/2020/08/16/law-com-trendspotter-covid-19-business-interruption-claims-are-white-hot-but-will-courts-cool-them-off/?slreturn=20200725183531 (last accessed Aug. 26, 2020).

The prospect of inconsistent rulings also encourages forum and judge shopping (including, for example, manipulation of varying discovery limits, approaches to electronically stored information, and protective orders). By contrast, a single MDL judge would coordinate pretrial discovery and rule on pretrial motions in all of the federal cases at once, thus minimizing the potential for conflicting rulings and reducing the inconvenience of witnesses, the burdens on the federal judiciary, and the litigation's overall expense. *See, e.g., In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 65 F. Supp. 3d 1402, 1405 (J.P.M.L. 2014) ("Issues concerning the development, manufacture, regulatory approval, labeling, and marketing of Xarelto…are common to all actions. Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel and the judiciary."); *In re Tylenol Mktg., Sales Practices & Prods. Liab. Litig.*, 936 F. Supp. 2d 1379, 1380 (J.P.M.L. 2013) ("Centralization will…prevent inconsistent pretrial rulings (on Daubert issues and other matters)…").

### D.   THIRST Takes No Position as to which District Court the Actions Should be Transferred.

Although THIRST believes consolidation and transfer is necessary to promote the just and efficient conduct of this case, it takes no position as to which district court the Panel should transfer the actions. THIRST's membership is national and THIRST is confident the Panel will select a transferee court with the appropriate levels of experience and bandwidth to resolve common questions fairly and swiftly.[9]

---

[9]   *See* Current Judicial Vacancies, United States Courts, available at https://www.uscourts.gov/judges-judgeships/judicial-vacancies/current-judicial-vacancies (last accessed Aug. 26, 2020); United States District Courts – National Judicial Caseload Profile, available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2019.pdf (last accessed Aug. 26, 2020); MDL Statistics Report – Distribution List of Pending MDL Dockets by District, available at *See* www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-May-15-2019.pdf (last accessed Aug. 26, 2020).

## IV. CONCLUSION

For the forgoing reasons, THIRST respectfully requests that the Panel coordinate these actions and transfer them to a Transferee Court and Judge pursuant to 28 U. S.C. Section 1407 that will provide a swift resolution of the plaintiffs' claims so these small businesses can rebuild with certainty as to what relief they are, or are not, entitled.

Respectfully Submitted,

Dated: August 27, 2020              */s/Kevin W. Tucker*
                                                    Kevin W. Tucker (He/Him/His)
                                                   Pa. No. 312144
                                                   Kevin J. Abramowicz (He/Him/His)
                                                   Pa. No. 320659
                                                   **EAST END TRIAL GROUP LLC**
                                                   186 42nd St., P.O. Box 40127
                                                   Pittsburgh, PA 15201
                                                   Tel. (412) 877-5220
                                                   ktucker@eastendtrialgroup.com
                                                   kabramowicz@eastendtrialgroup.com